UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO WARREN OIL CORPORATION, WARREN PETROLEUM CORPORATION AND GULF OIL CORPORATION | * | CIVIL ACTION NO.   10-0764 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| TERRY HIXON CUREINGTON AND THERESA MICHELLE HIXON SNUGGS | * | MAG. JUDGE KAREN L. HAYES |

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned magistrate judge, on reference from the district court, is a motion for summary judgment [doc. # 16] filed by declaratory defendants, Terry Hixon Cureington and Theresa Michelle Hixon Lord.  For reasons set forth below, it is recommended that the motion for summary judgment be **GRANTED**, and that the instant complaint be **DISMISSED, without prejudice**.

<u>Background</u>

I.      **The Declaratory Judgment Complaint**

On May 7, 2010, Chevron U.S.A., Inc. ("Chevron") (individually, and as successor in interest to Warren Oil Corporation, Warren Petroleum Corporation and Gulf Oil Corporation) filed the instant "Complaint for Declaratory Judgment" against Terry Hixon Cureington and Theresa Michelle Hixon Lord (incorrectly named in the complaint as "Snuggs") (collectively, "the Hixons").  Chevron alleges that on July 23, 1945, the Hixons' ancestor in title, W. S. Hixon,

granted an oil, gas, and mineral lease to Warren Petroleum Corporation in Richland Parish, Louisiana (the "1945 Hixon Lease"). (Compl., ¶ 10).[1]  During the primary term of the 1945 Hixon Lease, Chevron's predecessors drilled at least three productive wells on the subject property. (Compl., ¶ 16).  By February 1965, however, production on the Hixon property ceased and the wells on the property were plugged and abandoned in accordance with state conservation regulations. (Compl., ¶ 22).[2]

## II.     Pre-suit Communications Between the Hixons and Chevron

For more than 40 years after oil and gas production ended on the Hixon property, there apparently was no communication between the landowner(s) and the mineral lessee(s).  That abruptly changed, however, on November 24, 2009, when an attorney representing the Hixons notified Chevron's in-house counsel, via letter, that oil and gas operations by Chevron's predecessor had contaminated the Hixon property.[3]  The Hixons offered to settle the matter before resorting to litigation.  *Id.*

On December 7, 2009, Chevron's in-house counsel conveyed to Hixons' attorney his appreciation for the latter's willingness to resolve the matter before filing suit.[4]  Chevron's in-house counsel added that he would like to have a Chevron representative meet with the Hixons at

---

[1]  Specifically, the lease covered the North ½ of the Northeast Quarter of the Northwest Quarter and the North Half of the Northwest Quarter of the Northeast Quarter of Section 7, Township 16 North, Range 8 East.  *Id.*

[2]  Effective July 1, 1985, Chevron became the legal successor to the exploration and production liabilities of Warren Petroleum Corporation under the 1945 Hixon Lease. (Compl., ¶ 24).

[3]  *See* Compl., ¶ 26; Nov. 24, 2009, Letter from John Carmouche to Thomas Gottsegen; MSJ, Exh. 3 to Affidavit of William Coenen, III.

[4]  Dec. 7, 2009, Letter from Thomas Gottsegen to John Carmouche; MSJ, Exh. 4 to Affidavit of William Coenen, III.

the affected property to inspect the facilities.  *Id.*

In a March 31, 2010, letter, Chevron (now represented by retained counsel) stated that although the Hixon Lease did not contain any express damage or restoration clauses, and the property had been leased at least seven other times to unrelated companies, Chevron offered to conduct a scientific evaluation of the property and implement a remedial plan in accordance with state regulations – if required by state regulators.[5]

One day later, the Hixons' attorney responded to Chevron's letter, stating that the Hixons were amenable to Chevron testing the property, but they wanted the testing completed in April, because if they were unable to amicably resolve the matter shortly thereafter, the Hixons would need to file suit to protect their interests.[6]

On May 4, 2010, the Hixons' attorney exchanged e-mails with Chevron inquiring about a possible counteroffer by Chevron.[7]  Chevron replied that, in a couple of days, it would let them know what "direction" they were thinking.  *Id.*

On May 7, 2010, the Hixons received their answer.  Chevron wrote to the Hixons' attorney that it did not believe that it had breached any obligations to the Hixons.[8]  Chevron further advised that it was filing a "Complaint for Declaratory Relief and Alternative Relief" in

---

[5]  March 31, 2010, Letter from Charles McCowan, III, to William Coenen, III, et al.; MSJ, Exh. 5 to Affidavit of William Coenen, III.

[6]  April 1, 2010, Letter from William Coenen, III to Charles McCowan, III; MSJ, Exh. 6 to Affidavit of William Coenen, III.

[7]  May 4, 2010, e-mails between William Coenen, III and Trey McCowan; MSJ, Exh. 7 to Affidavit of William Coenen, III.

[8]  May 7, 2010, 2010, Letter from Charles McCowan, III, to William Coenen, III, et al.; MSJ, Exh. 8 to Affidavit of William Coenen, III.

3

federal court.  *Id.*[9]  Chevron added that it was willing to again evaluate the Hixon property and take remedial action, "if such action is deemed necessary."  *Id.*

True to its word, Chevron filed the instant declaratory judgment action on May 7, 2010. Succinctly summarized, the complaint seeks a judgment declaring that Chevron is not liable under any theory of liability for damages to the Hixon property as a result of oil and gas operations conducted thereon.  *See* Compl., ¶¶ 26-28.  In the alternative, Chevron

> seeks an order implementing the procedures set forth under La. R.S. 30:29, referring this matter to the Louisiana Department of Natural Resources, Office of Conservation for approval of a remedial plan and an order pursuant to the provisions of La. R.S. 30:29 permitting Chevron to enter the property at issue for the purpose of implementing the approved remedial plan.

*Id*. at ¶ 29.

## III.   The Hixons' State Court Petition

On May 27, 2010, the Hixons filed a "Petition for Damages" in the 5th Judicial District Court for the Parish of Richland, State of Louisiana against Chevron; Wayne J. Spears; Louisiana Bank & Trust Company; S&S Richland-Oakland; Winchester of Louisiana, Inc.; Belden & Blake Corporation; Petro-Tech; Delta Petroleum, Inc.; David Larkin Hart; and Phillberg Oil Company. (Petition; MSJ, Exh. 8 to Affidavit of William Coenen, III).[10]  The suit seeks to recover damages to the Hixon property as a result of oil and gas activities for which defendants are legally responsible.  *Id*.  The Hixons seek a litany of damages, including punitive or exemplary damages, and implementation of a remediation plan pursuant to Louisiana Revised Statue 30:29.  *See* Petition, ¶¶ 37, 41-43.

---

[9]  Ultimately, Chevron did not include the request for "Alternative Relief" in the title of the complaint.

[10]  On June 21, 2010, the Hixons amended their complaint to join three more defendants, Capital Gas, Inc.; Camark Production Co.; and Union Oil Co., L.L.C.  (1st Suppl. & Amend. Petition; MSJ, Exh. 10 to Affidavit of William Coenen, III).

4

Some time after July 27, 2010,[11] Chevron filed a "Declinatory Exception of Lis Pendens Under LSA-C.C.P. Art. 532 and Motion to Stay, and Dilatory Exception of Improper Cumulation of Actions and Joinder of Parties."  (Declinatory Exception; Pl. Reply Memo., Exh. to 2nd Affidavit of William Coenen, III).  In its motion, Chevron asserts that the claims in its federal declaratory judgment complaint arise from the same transaction or occurrence as the claims asserted by the Hixons in their state court suit.  *Id.*

**IV.    Post-Filing Developments in the Federal Declaratory Judgment Action**

On July 27, 2010, the Hixons answered the complaint.  [doc. # 5].  That same day, the court issued its Civil Case Management Order.  [doc. # 6].  By October 18, 2010, the parties exchanged initial disclosures and filed their Rule 26(f) Case Management Order.  [doc. # 12]. On October 19, 2010, the court set an August 22, 2011, trial date.  (Oct. 19, 2010, Sched. Order [doc. # 13]).  Less than two months later, however, and upon defendants' motion, the undersigned continued the trial setting, without date, pending resolution of the Hixons' motion for summary judgment.  *See* Motion for Status Conference [doc. # 14]; Dec. 2, 2010, Minutes [doc. #s 18-19].

Meanwhile on December 1, 2010, the Hixons filed the instant motion for summary judgment seeking dismissal of the declaratory judgment complaint on abstention grounds. Chevron filed its opposition on December 30, 2010.  The Hixons filed their reply brief on January 11, 2010.  The matter is now before the court.

<u>**Summary Judgment Principles**</u>

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of

---

[11]  The motion does not specify the date that it was filed.

law." Fed R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id*.

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.  "The court *need* consider only the cited materials, but it *may* consider other materials in the record."  Fed.R.Civ.P. 56(c)(3) (emphasis added).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[12] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must affirmatively establish its right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

<u>Analysis</u>

The Hixons urge the court to abstain from deciding the instant declaratory judgment action because of the pendency of their parallel state court suit.  Their argument is twofold: abstention is mandatory under the principles enunciated in *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 496 (5th Cir. 1988) (en banc);[13] or failing that, the court should exercise its discretion to abstain pursuant to *Brillhart v. Excess Ins. Co. of America*,  316 U.S. 491, 495, 62 S.Ct. 1173, 1176 (1942).  The foregoing arguments, however, presuppose that the instant complaint is limited to declaratory relief.  Chevron contends that because its complaint seeks alternative relief in the form of an order referring the matter to the Louisiana Department of Natural Resources ("DNR") for implementation of a remediation plan, the complaint necessarily seeks coercive relief, which withdraws the court's discretionary authority under *Brillhart*, and

---

[12]  I.e., beyond doubt.

[13]  *See Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 885 (5th Cir. 1993) (agreeing with the characterization of *Jackson* as a new type of abstention).

instead subjects the case to the considerably more demanding exceptional circumstances contemplated by *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236 (1976).  The court resolves these issues as follows.

## I.     Chevron's Purported Claim for Coercive Relief Proves Illusory

Before proceeding further, the court must pause to decide whether the instant "Complaint for Declaratory Judgment" is properly classified as a  declaratory judgment action.  This initial step is necessary because when a complaint for declaratory relief includes an additional claim or claims  for "coercive" (i.e. monetary or other) relief,[14] then the suit is no longer treated as a declaratory judgment action.  *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir. 1994) (citations omitted).  In other words, an action that seeks declaratory *and* injunctive relief must be treated as "an ordinary equity suit" ---- *unless*, the court determines that the requested injunctive relief is "frivolous or premature or otherwise wanting in equity," or is "made solely to avoid application of the *Brillhart* standard." *PPG Industries, Inc. v. Continental Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973); *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000).  The request for coercive relief is considered frivolous, *inter alia*, when the court lacks jurisdiction to grant the relief.  *See Trent, supra*.

Applying these principles here, it is manifest that Chevron added its alternative request for relief in a calculated effort to thwart *Brillhart* abstention.  Indeed, the Hixons and Chevron both agree that if the Hixons prevail on liability, the matter should be referred to the DNR for implementation of a remedial plan.  (Hixons' Petition, ¶¶ 37, 41-43.  In other words, the request for alternative relief does not present a case or controversy cognizable under Article III of the

---

[14] *Trent v. National City Bank of Indiana*, 145 Fed. Appx. 896, 898, 2005 WL 1990208, 1 (5th Cir. 2005) (unpubl.).

Constitution; thus, the court lacks jurisdiction to entertain the claim.[15]  Therefore, the instant complaint is properly treated as a pure declaratory judgment action and the *Colorado River* abstention analysis is inapplicable.  *See Trent, supra*.

## II.    **Abstention is Warranted under *Brillhart***

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . ."  28 U.S.C. § 2201(a).

The twin purposes of the Declaratory Judgment Act are "to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued . . ." and "to provide a means of settling an actual controversy before it ripens into a violation of the civil or criminal law, or a breach of a contractual duty." *Rowan Companies, Inc. v. Griffin*,   876 F.2d 26, 28 (5th Cir. 1989) (citations and internal quotation marks omitted).  The Declaratory Judgment Act provides the district courts with an "opportunity" rather than a "duty" to grant relief.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 2143 (1995).  Thus, a district is authorized, in its discretion, to stay or to dismiss a declaratory judgment action.  *Id.*

_____

[15]  "The case or controversy requirement of Article III of the Constitution requires a plaintiff to show that he and the defendants have adverse legal interests."  *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461 (1937)).  The court lacks jurisdiction when plaintiff fails to satisfy Article III's "case or controversy" requirement.  *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006).

Moreover, to the extent that the supplemental jurisdiction statute, 28 U.S.C. § 1367, may be employed to confer jurisdiction over Chevron's claim for alternative relief, there still would be nothing for the court to decide because all sides agree that the requested alternative relief is appropriate should the Hixons establish Chevron's liability.  Thus, Chevron's alternative claim is frivolous.

In deciding whether to maintain or dismiss a declaratory judgment suit, the district court shall consider:  "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."  *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003) (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).[16]  The district court is required to consider all three factors.  *American Bankers Life Assurance Co. of Fl. v. Overton*, 128 Fed. Appx. 399, 402, 2005 WL 943522, 2 (5th Cir. Apr. 21, 2005) (unpubl.).

a)      The Declaratory Judgment Action is Justiciable

 "A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop."  *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir.1967).  Stated differently, there must be an "actual controversy" between the parties that is ripe.  *Orix Credit Alliance, Inc, supra* (citation omitted).  "[A]n actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests."  *Id*.

The instant declaratory judgment complaint satisfies the foregoing requirements. Currently, there is a pending state court action seeking the converse relief.  Moreover, the matter was ripe at the time the declaratory complaint was filed .

b)      The Court Enjoys Authority to Grant Declaratory Relief

In *Jackson*, the Fifth Circuit determined that "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction-providing

---

[16]  The second and third inquiries represent the mandatory and discretionary abstentions under *Jackson* and *Brillhart*, respectively.

the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act."
*Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993)
(citing *Texas Employers' Ins. Ass'n v. Jackson, supra*).  Thus, the court generally does not enjoy
authority to decide the merits of a declaratory judgment action when "1) a declaratory defendant
has *previously* filed a cause of action in state court against the declaratory plaintiff, 2) the state
case involves the same issues as those involved in the federal case, *and* 3) the district court is
prohibited from enjoining the state proceedings under the Anti-Injunction Act."  *Id*. (emphasis
added).  "The absence of any of the three factors defeats mandatory abstention . . ."  *Sealed v.
Sealed*, 1994 WL 487245, 2 (5th Cir. Aug. 18, 1994) (unpubl.).  Only a very small class of highly
distinguishable cases will survive the broad rule announced by *Jackson*.  *Travelers Ins. Co.*, 996
F.2d at 776.

It is not completely clear whether mandatory abstention under *Jackson* is limited solely to
federal declaratory judgment actions that are filed *after* a related state court action has been filed
by the declaratory defendant against the declaratory plaintiff.  In *Jackson*, the federal declaratory
judgment action was filed after a previously filed civil court action.  *Jackson*, 862 F.2d at 493.
Therefore, in *Travelers*, the court grafted this additional element into the *Jackson* abstention
inquiry.  *Travelers, supra*.

In *Quinn-L*, however, which was decided but a few months after *Travelers*, the Fifth
Circuit held that the Anti-Injunction Act applies "even when the federal suit is filed first."
*Quinn-L, supra*.[17]  The *Quinn-L* court stressed its recent recognition in *Travelers* of a requisite
filing sequence between the parallel suits, but nevertheless determined that *Jackson* did not apply
where the federal declaratory judgment action is filed *substantially* before the state court suit and

---

[17]  The *Jackson* decision is premised upon the Anti-Injunction Act.  *Jackson, supra*.

11

where *significant* proceedings have transpired in the federal suit.  *Id*.  This latter holding in *Quinn-L* would appear to be redundant, if, as *Travelers* held, *Jackson* does not apply when the federal suit is filed before the state court action.  In short, despite paying lip service to *Travelers*' interpretation of *Jackson*, the *Quinn-L* panel seemingly retreated from *Travelers*' imposition of a strict, bright-line filing sequence.

The next year, however, the Fifth Circuit revisited the *Jackson* abstention requirements in *Sealed v. Sealed*, wherein it commented that *Jackson* was premised upon *Steffel v. Thompson*, 415 U.S. 452 (1974), which, in turn, held that "'[w]hen no state criminal proceeding is pending *at the time the federal complaint is filed*, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system.'"  *Sealed v. Sealed*, 1994 WL 487245, *3 (5ᵗʰ Cir. Aug. 18, 1994) (citing *Steffel*, 415 U.S. at 462).[18]  The *Sealed* court also cited *St. Paul Fire & Marine Ins. Co. v. Lupin*, a district court decision which held that mandatory abstention did not apply where the declaratory plaintiff filed its complaint in federal court before the declaratory defendant sought relief against the declaratory plaintiff in state court.  *Sealed, supra* (citing *St. Paul Fire & Marine Ins. Co. v. Lupin*, No. 94-253, 1994 WL 261935 (E.D. La. June 3, 1994)).

Faithful to the most consistent Fifth Circuit authority on this issue, the undersigned concludes that *Jackson* abstention is not required because Chevron filed the instant declaratory judgment action before the Hixons commenced their suit in state court.  *See Travelers, supra; Sealed, supra; Lupin, supra*.[19]

---

[18]  The fact that *Steffel* involved a state criminal proceeding was irrelevant.  *Id*. at n2.

[19]  Having determined that one of the three requisite factors for *Jackson* abstention is lacking, consideration of the remaining factors is superfluous and unnecessary.  *See Sealed, supra* ("absence of any of the three factors defeats mandatory abstention . . ."); *Lupin, supra*

c)      The Instant Facts Warrant Discretionary Abstention

In *Brillhart v. Excess Ins. Co. of America*, the Supreme Court observed that

[o]rdinarily it would be uneconomical as well as vexatious for a federal court to
proceed in a declaratory judgment suit where another suit is pending in a state
court presenting the same issues, not governed by federal law, between the same
parties. Gratuitous interference with the orderly and comprehensive disposition of
a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176.

Accordingly, "abstention from a declaratory judgment action is ordinarily appropriate when the

state offers an adequate alternative forum in which to resolve the particular dispute." *Southwind*

*Aviation, Inc.*, 23 F.3d at 950.

Over the years, the Fifth Circuit has settled upon seven nonexclusive factors that the

district courts need to address when deciding whether to decide or dismiss a declaratory

judgment action. *Sherwin-Williams Co.*, 343 F.3d at 388.  These so-called *Trejo* factors include

(1)     whether there is a pending state action in which all of the matters
        in controversy may be fully litigated;

(2)     whether the plaintiff filed suit in anticipation of a lawsuit filed by
        the defendant;

(3)     whether the plaintiff engaged in forum shopping in bringing the
        suit;

(4)     whether possible inequities in allowing the declaratory plaintiff to
        gain precedence in time or to change forums exist;

(5)     whether the federal court is a convenient forum for the parties and
        witnesses;

(6)     whether retaining the lawsuit would serve the purposes of judicial
        economy; and

---

(truncating the mandatory abstention analysis after the court determined that the cases did not
satisfy the requisite filing sequence).

(7)     whether the federal court is being called on to construe a state
        judicial decree involving the same parties and entered by the court
        before whom the parallel state suit between the same parties is
        pending.

*Id*.  (citing *inter alia, St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir.1994)).

These seven factors contemplate three broad areas of concern – "federalism, fairness/improper

forum shopping, and efficiency." *Overton, supra* (citation omitted).  Nonetheless, the district

courts are duty-bound to consider all seven *Trejo* factors on the record.  *Vulcan Materials Co. v.

City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001).  The court addresses these considerations,

as follows,

**1)      There Is a Pending State Action in Which All of the Matters in
          Controversy May Be Fully Litigated**

This factor is not disputed.  *See e.g.*, Opp. Memo., pg. 15.  It supports abstention.

**2-3)    Chevron Filed the Declaratory Judgment Complaint in Anticipation of the
          Hixons' Lawsuit and Engaged in Forum Shopping When it Filed the Suit**

Chevron does not seriously argue that it did not file the instant suit in anticipation of the

Hixons' threatened lawsuit.  The Hixons unambiguously conveyed to Chevron their intention to

file suit, unless the parties were able to promptly resolve the dispute.  In response to the Hixons'

inquiry regarding a counteroffer, Chevron responded that in a couple of days, it would let them

know what "direction [it was] thinking."  Three days later, Chevron broke the news to the Hixons

that it did not believe that it was liable for the alleged contamination of the Hixon property, and

that they had contemporaneously filed suit to obtain a declaratory judgment to that effect.  This

sequence of events supports a finding of anticipatory filing.  *Mission Ins. Co. v. Puritan Fashions

Corp.*, 706 F.2d 599, 602 (5th Cir. 1983).[20]  Moreover, anticipatory suits comprise an aspect of

---

[20]  In *Puritan Fashions*, the declaratory plaintiff granted defendant an extension of time to
file suit until 30 days after receipt of the declaratory plaintiff's position statement.  *Id*.  Shortly

14

forum-shopping.  *Id.*; *see also Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 96 (5th Cir.

1992) (affirming determination that the declaratory judgment complaint was filed in anticipation

of litigation where the parties had engaged in lengthy negotiations and the declaratory plaintiff

did not deny liability until it filed the declaratory action).

Relying heavily upon *Sherwin-Williams Co.*, Chevron contends that it did not engage in

forum-shopping; rather, it merely exercised its congressionally accorded right via the diversity

statute to a "separate forum for out-of-state citizens to protect those citizens against the

prejudices of local courts and local juries by making available to them the benefits and

safeguards of the federal courts."  *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1153 (5th Cir.

1985).

Chevron's argument, however, overlooks the requirement that "*[a]ll* plaintiffs must be

diverse in citizenship from *all* defendants in an action brought under the jurisdiction conferred by

28 U.S.C. § 1332(a)."  *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th

Cir. 1990).  Indeed, several of the defendants that the Hixons joined in their state court suit with

Chevron are not diverse; thus removal of the state court petition, via  diversity, is not presently

available.  Under similar circumstances, the Ninth Circuit has recognized that "to allow the

federal declaratory judgment action to go forward would impermissibly 'sanction partial removal

in all but name.'"  *Sherwin Williams Co., supra* (citing *Continental Cas. Co. v. Robsac

Industries*, 947 F.2d 1367, 1373 (9th Cir. 1991)).[21]  The Ninth Circuit explained that,

[i]f, as Continental contends, it intended to file suit in federal court before Robsac

---

after granting the extension, however, the declaratory plaintiff rejected the defendant's claim and
filed suit the same day.  *Id.*

[21]  *Robsac* was overruled, on other grounds, by *Government Employees Ins. Co. v. Dizol*,
133 F.3d 1220 (9th Cir. 1998).

15

> filed its state court action, the reason it formed that intention was that it was aware of Robsac's claim and hoped to preempt any state court proceeding. Whether the federal declaratory judgment action regarding insurance coverage is filed first or second, it is reactive, and permitting it to go forward when there is a pending state court case presenting the identical issue would encourage forum shopping in violation of the second *Brillhart* principle.

*Robsac, supra.*

Chevron also relies on *Sherwin Williams Co.*, to the extent the decision attempts to downplay the anticipatory filing and forum-shopping language enunciated in *Puritan Fashions, supra*. Needless to say, however, a later panel of the Fifth Circuit cannot overrule an earlier panel's decision. *Ryals v. Estelle*, 661 F.2d 904, 906 (5th Cir. 1981). In any event, *Sherwin Williams Co.* is readily distinguishable because of the countervailing considerations at work in that case: the prospect that the declaratory plaintiff would be sued in multiple suits in multiple forums, with the concomitant possibility of inconsistent judgments; the presence of a federal issue(s); and no pending state court actions. Those circumstances are lacking here.

Accordingly, the second and third *Trejo* factors strongly favor abstention.

**(4)     It Would Be Inequitable to Permit Chevron to Select the Forum**

The Hixons, via counsel, initially approached Chevron, *at Chevron's request*, in an effort to resolve the parties' differences without resorting to suit. Although Chevron apparently went through the motions of investigating the claim, it ultimately filed this declaratory judgment action contemporaneously with their denial of liability. At a minimum, Chevron breached the Hixons' trust. Furthermore, the preemptive declaratory strike casts a pall over the entire negotiation process and raises a question regarding Chevron's good faith.

If the court were to sanction Chevron's procedural gamesmanship, it would effectively

16

penalize the Hixons for attempting to do the "right thing," i.e., bridge the parties' differences before resorting to lengthy and costly litigation. This inevitably would have a chilling effect on pre-suit settlement discussions and cause aggrieved parties to seek immediate recourse with the courts.

The court further emphasizes that the twin purposes of the Declaratory Judgment Act are not at issue in this case. Chevron did not face the threat that the parties' dispute would linger for a prolonged period. To the contrary, the Hixons clearly expressed their intent to file suit in a matter of days – which they ultimately did. Furthermore, Chevron does not need any disputed issue resolved to guide the parties' future conduct, as Chevron no longer conducts operations on the Hixon property. The instant dispute centers upon conduct that occurred long ago

This factor strongly favors abstention.

### 5) This Court Is Neither More Convenient Nor Inconvenient for the Parties and Witnesses

This court and the forum of the related state court action, the 5th Judicial District Court for the Parish of Richland, are roughly 20 miles apart and connected via interstate. There is no evidence that this relatively short distance materially impacts access to the respective venues. Accordingly, this factor is neutral.

### 6) Retaining the Declaratory Judgment Action Does Not Advance Judicial Economy

The instant complaint presents a discrete question regarding Chevron's liability for the damage to the Hixon property. However, this issue is also present in the pending state court case, along with issues regarding liability of the other defendants, and the availability of a full spectrum of damages should the Hixons prevail.

17

Chevron argues that if this court proceeds with the declaratory judgment action, then all other issues and parties could be joined in this suit.  While Chevron may be correct, this would result in parallel, duplicative suits engaged in a race to judgment.  However, "[u]sing a declaratory judgment action to race to res judicata or to change forums is thoroughly inconsistent with the purposes of the Declaratory Judgment Act and should not be countenanced." *Travelers*, 996 F.2d at 777, n7.

Accordingly, this factor favors abstention

**7)      The Federal Court Is Not Being Called on to Construe a State Judicial Decree Involving the Same Parties and Entered by the Court Before Whom the Parallel State Suit Between the Same Parties Is Pending**

Accordingly, this factor is neutral.

Upon consideration of the foregoing factors, the undersigned concludes that this declaratory judgment action is the raison d'etre for *Brillhart* abstention.  This suit does not promote any purpose behind the Declaratory Judgment Act.  It is clearly a procedural maneuver calculated to commandeer the forum selection initiative that traditionally remains the prerogative of the aggrieved party.  Finally, it is plain that resolution of the state court suit will necessarily dispose of the questions raised in the declaratory complaint.  The dual considerations of comity and prudent judicial administration dictate that all issues relating to this cause of action be decided by one court.  That court is the state court.[22]

---

[22]  In fact, it may be an abuse of discretion *not* to abstain under the instant facts.  *See Magnolia Marine Transport Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571, 1581 (5th Cir. 1992) (court abused its discretion by declining to abstain where plaintiff sought declaratory judgment solely to obtain preferred forum in which to anticipate a defense that could be raised in Louisiana state court and which would lead to duplicative and piecemeal litigation).

18

**III.    Dismiss or Stay?**

When the basis for declining to maintain a declaratory judgment action is the pendency of a state court action, a stay is often preferred to dismissal. *Wilton*, 515 U.S. at 288, n2.  This is because "[c]onceivably state action could be quite unreasonably delayed or other factual situations not now anticipated might develop in the state litigation which would cause the district court on appropriate petition to desire to reactivate and to go forward with the pending but presently stayed action." *PPG Industries, Inc., supra*.

Here, however, Chevron has not expressed any such reservations.  Moreover, there is no indication that Chevron will experience any significant prejudice if the state court proceedings are protracted.  Indeed, Chevron's exposure remained latent for some 40 years before it was recently unearthed.  Also, there is every indication that the Hixons want the matter resolved at the earliest opportunity.  Finally, courts in this district have routinely dismissed similarly postured declaratory judgment actions on the basis of *Brillhart*.  *See e.g.*, *Rolls-Royce Naval Marine, Inc. v. A&B Industries of Morgan City, Inc.*, 2010 WL 3947327 (W.D. La. Sept. 15, 2010); *State Farm Fire & Cas. Co. v. LaFuria*, 2008 WL 5479635, 4 (W.D. La. Oct. 22, 2008); and *Aries Marine Corp. v. Lolly*,  2006 WL 681184 (W.D. La. March 16, 2006).

## Conclusion

For the foregoing reasons, the court finds that there are no genuine issues of material fact and that defendants, Terry Hixon Cureington and Theresa Michelle Hixon Lord, are entitled to judgment as a matter of law dismissing, without prejudice, the instant complaint for declaratory judgment.  Fed.R.Civ.P. 56.  Accordingly,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 16] filed by

19

defendants, Terry Hixon Cureington and Theresa Michelle Hixon Lord, be **GRANTED**, and that the instant complaint be **DISMISSED, without prejudice**.

Under the provisions of 28 U.S.C. § 636(b)(1)© and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 18th day of February 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

20